# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
September 9, 2009 Session

## STATE OF TENNESSEE v. EDWARD GARCIA SUMMERS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1754     Monte Watkins, Judge**

---

**No. M2008-02684-CCA-R3-CD - Filed April 28, 2010**

---

The defendant, Edward Garcia Summers, was indicted for possession with the intent to sell .5 grams or more of a substance containing cocaine, possession of marijuana, and possession of drug paraphernalia, all charges based upon evidence seized during a search of his residence. The defendant filed a motion to suppress the evidence, alleging that there was no probable cause to support the issuance of the search warrant. The trial court granted the defendant's motion, and the State now appeals. Upon review, we reverse the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed; Case Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellant, State of Tennessee.

Jeffery A. Devasher (on appeal), Lisa D'Souza (on appeal), and Katie Weiss (at trial), Nashville, Tennessee, for the appellee, Edward Garcia Summers.

## OPINION

At the suppression hearing, the only proof adduced was the affidavit in support of the search warrant, and the parties submitted arguments regarding the affidavit. The defendant argued that the affidavit in support of the search warrant did not provide a sufficient nexus between the crimes alleged and the place to be searched, namely the defendant's residence.

The defendant maintained that the affidavit did not reflect that a drug buy occurred in the defendant's residence nor did it definitively allege that the drugs came from the defendant's residence. The State contended that the nexus contained in the affidavit consisted of the facts indicating that the defendant received a call setting up the drug buy and that he returned to his residence before proceeding to the drug buy.

The affidavit in support of the search warrant provided that the search was to be conducted at "308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217, and/or upon the persons of any others using or occupying the premises." In support of the search warrant, the following facts were recited:

> This affidavit is made by Detective Gary Sneed who has been a sworn police officer since 2001, has participated in narcotics enforcement since 2004, and is now currently assigned to South Crime Suppression Unit, who now testifies herein as to facts which are based upon personal knowledge, upon information received from other law enforcement officers, or information received from other sources as noted, which your Affiant believes to be true, and is as follows: During October[] 2007, your affiant . . . received information that illegal narcotics are being sold at 308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217. Within the last 72 hours, your Affiant met with a Confidential Informant (hereafter referred to as CI). CI was searched for contraband and stripped of money of their own. CI was wired with an electronic listening device. Said CI was then given previously photocopied buy money and instructed to purchase a quantity of crack cocaine from 308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217. The CI made the phone call to set up the crack cocaine purchase, and was driven to the area of 308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217. The CI was dropped off in front of Building "O" at the Berkley Ridge Apartments. Detective Blaisdell observed the target subject on the phone with the CI, and once the conversation was finished the subject walked into 308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217. Detective Blaisdell then observed the target subject exit 308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217, and the target subject

-2-

then entered his 1999 Dodge Durango . . . Blue in color and drove to the area of building "O" at Berkely Ridge Apartments. CI bought a quantity of crack cocaine from the occupant of 308 Plus Park Blvd. Berkley Ridge Apartments Apt. L-14, Davidson County Nashville, TN 37217[] and then I immediately picked up the CI in front of Building "O" once the target subject left the complex. The CI at this time turned over a white rock substance. The exchange was monitored by detectives through the use of the electronic listening device. Based on your affiant's training and experience, the white rock material is crack cocaine, a Schedule II controlled substance. The white rock material was consistent in color, texture, smell and appearance with crack cocaine your affiant has seized in connection with other narcotics investigations. The substance also field-tested positive for cocaine base. The CI was then searched and no other contraband was found. Said CI is familiar with crack cocaine from past exposure and experience, and has given information in the past that has led to the lawful recovery of illegal narcotics. Affiant will disclose the CI's name only to the Judge signing the warrant. The CI wishes to remain anonymous for fear of reprisal. . . .

The affidavit stated that, based upon the affiant's training, experience, and participation in other successful drug investigations, drug dealers keep documents relating to their business and often those records are maintained at the residence of the drug dealer or an accomplice. The affidavit further stated that

[d]rug dealers very often will hide contraband, proceeds of drug sales and records of drug transactions in secure location[s] such as their own residences, locations which they control but which are titled in the names of others, residences of others who are participants in or aiders and abettors of the drug conspiracy, their businesses, and bank safety deposit boxes to conceal them from law enforcement officials.

After listening to the arguments and reading the affidavit, the trial court found:

[T]he present affidavit does not state with any particularity corroborating information to attest to the necessary probable cause that drugs will be found in the defendant['s] apartment

apart from the fact that the defendant resides there. The police have stated as a basis of reliability that drug dealers keep evidence of their drug dealing in their home. This basis of reliability here is not sufficient to satisfy the reliability prong of the *Aguilar-Spinelli* two-prong test. The police were only able to confirm the defendant resided at the house to be search[ed] and this one element of non-suspect behavior offers little support to the credibility of the informant or the reliability regarding the occurrence of drug transactions at the defendant's residence.

Based upon the foregoing, the trial court found that there was an insufficient nexus between the drug buy and the defendant's apartment. Accordingly, the trial court suppressed the evidence found as a result of the search. On appeal, the State contests this ruling.

## II. Analysis

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Generally, absent a few narrowly defined exceptions, a search must be conducted according to a valid search warrant to be reasonable. See State v. Brown, 294 S.W.3d 553, 561 (Tenn. 2009). Search warrants are to be issued only upon a showing of probable cause, which "must be based upon evidence included in a written and sworn affidavit." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). "A showing of probable cause requires, generally, reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." State v. Stevens, 989 S.W.2d 290, 293 (Tenn. 1999). To establish probable cause

> [a]n affidavit in support of a search warrant must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched. The nexus between the place to be searched and the items to be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the evidence.

State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993) (citations omitted). As a general rule, "'affidavits must be looked at and read in a commonsense and practical manner', and . . . the finding of probable cause by the issuing magistrate is entitled to great deference." State v. Bryan, 769 S.W.2d 208, 211 (Tenn. 1989) (quoting State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982)).

Both the appellant and the State contend that this case is governed by State v. Cedric Ruron Saine, No. M2007-01277-CCA-R3-CD, 2008 WL 918511 (Tenn. Crim. App. at Nashville, Apr. 4 2008), perm. to appeal granted, (Tenn. Dec. 15, 2008). In that case, Saine filed a motion to suppress evidence recovered during a search of his residence, alleging that the search warrant for his residence was not supported by probable cause. Id. at *1. The affidavit in support of the search warrant alleged that a confidential informant arranged to purchase drugs from Saine, but the purchase took place at an undisclosed location, not at Saine's residence. Id. The affidavit further alleged that Saine left his residence to meet with the confidential informant and that he returned to his residence after the sale. Id. at *2. The trial court found that there was no nexus between the drug purchase and Saine's residence and that the evidence should therefore be suppressed. Id. at *5. On appeal, this court affirmed the judgment of the trial court. Id. at **7-9.

Based upon this court's ruling in Saine, we would have affirmed the trial court's ruling in the instant case. However, our supreme court granted permission to appeal this court's decision in Saine, and, after the instant case was argued at the suppression hearing in the trial court and at oral argument before this court, our supreme court released State v. Saine, 297 S.W.3d 199 (Tenn. 2009), concluding that there was a sufficient nexus between the drug purchase and Saine's residence. The court acknowledged that the affidavit did not contain direct information connecting the drug purchase with Saine's residence and therefore sought to determine if the affidavit provided sufficient proof for the magistrate to infer that the contraband would be located in Saine's residence. Id. at 206. In making this determination, our supreme court noted:

> "[T]here need not be definite proof that the seller keeps his supply at his residence. . . . [I]t will suffice if there are some additional facts, (such as that . . . the seller or buyer went to his home prior to the sale or after the sale . . .) which would support the inference that the supply is probably located there."

Id. (quoting 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(d) (4th ed. 2004 & Supp. 2008-09)). The court found that the information in the affidavit indicating that officers observed Saine leaving from his residence to go to the drug purchase and immediately returning to his residence could lead a magistrate to reasonably infer that drugs were located in Saine's residence. Id. The court concluded that the inference was further supported by the officer stating in the affidavit that, in his experience, "drug dealers ordinarily keep their drugs, the proceeds of drug sales, and financial records related to their business in their residences." Id. Noting that the probable cause determination of a neutral and detached magistrate should be given great deference by a reviewing court, our supreme court concluded that "the facts contained in the application for the search warrant

-5-

established a substantial basis on which the magistrate could conclude that evidence of Mr. Saine's drug trafficking would be found inside his residence." Id. at 207. Therefore, our supreme court overruled this court's opinion and reversed the trial court's suppression of evidence found during the search of Saine's residence. Id.

We, like the parties and the trial court, fail to see how the case before us is distinguishable from Saine.[1] The affidavit supporting the instant search warrant alleged that the confidential informant called the defendant to arrange to purchase drugs. Police observed the defendant on the telephone with the confidential informant. After the call, the defendant immediately went to his residence before leaving to sell drugs to the confidential informant, supporting the inference that the defendant needed to obtain the drugs from his residence before meeting with the confidential informant. Additionally, as in Saine, the detective making the affidavit asserted that in his experience as a law enforcement officer, drug dealers often keep documents, monies, and contraband relating to drug transactions in their residences. Accordingly, based upon the case law established by our supreme court in Saine, we are compelled to reverse the trial court's ruling that the search warrant was invalid and the trial court's subsequent suppression of the evidence found during a search of the residence.

### III. Conclusion

The judgment of the trial court is reversed, and the case is remanded for further proceedings.

_____
NORMA McGEE OGLE, JUDGE

---

[1] In his brief, the defendant "submits that the issue in this case is virtually identical to that presented in Saine, and compels the same result."